UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WEST TEXAS MUNICIPAL POWER AGENCY, | ) ) ) |
| Intervenor Plaintiff, | ) ) |
| v. | ) ) Case No. CIV-23-232-G ) |
| ELK CITY II WIND, LLC, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| ELK CITY RENEWABLES II, LLC, | ) ) |
| Defendant. | ) |

## ORDER

Now before the Court is a Motion to Dismiss (Doc. No. 43) filed by Defendants Elk City II Wind, LLC and Elk City Renewables II, LLC. Intervenor Plaintiff West Texas Municipal Power Agency has responded (Doc. No. 46), and the motion is now at issue.

I. *Summary of the Pleadings*

In this diversity action, Plaintiff City of Lubbock, Texas ("Lubbock"), a home-rule municipality chartered and incorporated in Lubbock County, Texas, initially brought claims against Defendants, who maintain a wind generation facility in Roger Mills County and Beckham County, Oklahoma. *See* Am. Compl. ¶¶ 1-3, 5 (Doc. No. 21). On March 25, 2024, the West Texas Municipal Power Agency ("WTMPA") filed its Complaint in Intervention (Doc. No. 42).

In 1983, the Texas cities of Lubbock, Brownfield, Tulia, and Floydada created the WTMPA. *See* Am. Compl. ¶ 8. WTMPA is a municipal power agency formed to enhance the negotiating strength of its member cities in obtaining favorable electric power contracts and in coordinating joint planning for additional power generation. Compl. in Intervention ¶ 4(2). WTMPA is authorized to enter into contracts as necessary for the generation, transmission, sale, or exchange of electric energy. *Id.* ¶ 1.

On or around November 26, 2012, WTMPA and Defendants entered into the Roger Mills and Beckham Counties, Oklahoma Elk City II Energy Center Power Purchase Agreement (the "PPA"). *Id.* ¶ 5; *see id.* Ex. 3, PPA (Doc. No. 42-3, at pp. 1-60).[1] The PPA governs the sale, delivery, and purchase of energy from Defendants' wind farm (or "Wind Project") located in Roger Mills and Beckham Counties. Compl. in Intervention ¶ 5. The PPA provides for its term to commence on June 1, 2019, about six and one-half years after its Effective Date, and to terminate on May 31, 2032. *See* PPA §§ 1.1., 3.1.

As of April 24, 2018, the PPA was amended by WTMPA and Defendants to provide for, among other things, the ability of WTMPA to assign some or all of its interest in the PPA to its member cities. *See* Compl. in Intervention Ex. 3, PPA Amend. No. 1 (Doc. No. 42-3, at pp. 61-70). Through this amendment, WTMPA and Defendants amended the PPA to permit "any assignment or transfer of all or a portion of [the PPA] by [WTMPA] to any of its member cities," provided that the member city "ha[d] executed an Assignment and

---

[1] The seller on the PPA is identified as "Elk City II Wind, LLC." Defendant Elk City Renewables II, LLC is the 100% assignee of all assets of Elk City II Wind, LLC. Compl. in Intervention ¶ 4(1).

Assumption for no less than 85% of [WTMPA]'s obligations hereunder." *Id.* § 4(i). Thereafter, WTMPA assigned 85 percent of its right, title, and interest in and to the PPA to Lubbock and deleted that city as a member of the WTMPA. Compl. in Intervention ¶ 7.

The current participating cities in WTMPA are Brownfield, Tulia, and Floydada. *See id.* ¶¶ 1, 7. Lubbock holds 85 percent of the right, title, and interest in and to the PPA, and WTMPA holds fifteen percent of the right, title, and interest in and to the PPA. *Id.* ¶ 7.

Under the PPA, as amended, Defendants are obligated to sell and deliver to WTMPA and Lubbock the "Tendered Energy" expressed in kilowatt hours of energy (the "Purchased Energy"), together with all credits (including renewable energy credits) associated with the Purchased Energy. *See* PPA §§ 1.1, 2.1. Under the PPA, Defendants "make[] no representation, warranty, or guarantee as to the amount of Tendered Energy to be provided hereunder." *Id.* § 2.1. "Tendered Energy" means "one hundred percent (100%) of the energy produced by [Defendants'] Wind Project, net of Facility Consumption, that [Defendants] shall tender at the Delivery Point." *Id.* § 1.1. The PPA requires Lubbock and WTMPA to accept delivery of 100 percent of the Tendered Energy or otherwise pay liquidated damages to Defendants. *See id.* § 2.3(a); Compl. in Intervention ¶ 15. Under the PPA, Lubbock and WTMPA "shall pay [Defendants] an amount equal to the Contract Rate multiplied by each MWh of Purchased Energy delivered to the Delivery Point during the Term, at the applicable rate" set forth in the PPA. PPA § 2.2(a). Starting at the commencement date of June 1, 2019, and throughout the remainder of the term, Defendants are to calculate the amount of Purchased Energy from recordings

produced by the meters for Defendants' Wind Project and then invoice Lubbock and WTMPA.  Compl. in Intervention ¶ 16 (citing PPA §§ 2.6(a), 3.1).

WTMPA alleges that, pursuant to this arrangement, Lubbock and WTMPA "were and are purportedly obligated to accept and pay for the entirety of the energy produced by [Defendants] for 13 years." *Id.* ¶ 17 (citing PPA §§ 2.2, 2.6, 3.1).  "The PPA does not permit WTMPA or [Lubbock], as a purchaser, to control or limit the amount of energy that it must purchase.  Nor does the PPA have a provision entitling [Lubbock] or WTMPA to terminate the PPA upon the end of a budget period." *Id.* ¶ 18.

WTMPA alleges that, due to "the uncertainty about the amount of energy that has or will be delivered, the timing of that delivery, lack of transmission capacity to transport the energy from the point of delivery," and congestion charges, "it is not economically feasible for WTMPA to schedule the [Wind Project] energy for delivery to it or its member cities." *Id.* ¶ 19.  WTMPA has attempted to mitigate its losses by re-selling Wind Project energy "at approximately 50% of the price paid by WTMPA to [Defendants]." *Id.* ¶ 19.

WTMPA has paid all amounts due and owing under the PPA and has otherwise complied with or performed the obligations of the agreement. *Id.* ¶ 20.  As of April 2023, WTMPA has paid $7,368,002.55 to Defendants for Tendered Energy and has been able to resell that energy for $4,253,000.00  *Id.* ¶ 41 (alleging "a balance of $3,115,002.55").

II.   *The Parties' Claims and Standards of Review*

On September 17, 2024, the Court granted Defendants' motion to dismiss as to Lubbock's claims. *See City of Lubbock v. Elk City II Wind, LLC*, No. CIV-23-232-G, 2024 WL 4218031 (W.D. Okla. Sept. 17, 2024).  All remaining claims and counterclaims

4

between Lubbock and Defendants were thereafter dismissed with prejudice. *See* Order of Jan. 15, 2025 (Doc. No. 71).

In the instant dispute, Intervenor Plaintiff WTMPA seeks entry of the following declaratory judgment: that the PPA is void due to its violation of article XI, sections 5 and 7 of the Texas Constitution and that the PPA is void due to its violation of article III, section 52(a) of the Texas Constitution. *See* Compl. in Intervention ¶¶ 21-37.[2] WTMPA also brings a claim against Defendants for money had and received/unjust enrichment. *See id.* ¶¶ 38-42. Defendants now seek dismissal of WTMPA's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). Here, Defendants make a facial attack on the sufficiency of the allegations contained in the Complaint in Intervention. A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing such an attack, a district court confines its analysis to the pleadings and must accept the allegations in the complaint as true. *Id.*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint

---

[2] The PPA prescribes that it "shall be interpreted and enforced in accordance with the laws of the State of Texas without regard [to] its conflicts of laws provisions." PPA § 8.13. The amendment also states it "will be governed by the same state whose laws govern the [PPA]." Amend. No. 1, § 5(b).

5

and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III. Discussion

    A. Whether WTMPA Has Standing to Challenge the PPA Under Article XI of the Texas Constitution

Defendants argue that the Court lacks jurisdiction over WTMPA's claim that the PPA is void for failure to satisfy the revenue-appropriations requirements of article XI, sections 5 and 7 of the Texas Constitution. *See* Defs.' Mot. to Dismiss at 14-18.

6

Specifically, Defendants contend that the WTMPA is not a "city" within the meaning of and subject to the requirements of those constitutional provisions. *See id.*

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). "Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1)." *Altstatt v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, No. CIV-22-811-D, 2023 WL 6208550, at *2 (W.D. Okla. Sept. 22, 2023); *see also U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002). To have standing to sue, a plaintiff must properly allege: (1) it "ha[s] suffered an injury in fact—an invasion of a legally protected interest"—"that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *New Eng. Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

The Texas Constitution, at article XI, section 5, provides, subject to an inapplicable exception:

> [N]o debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent.

Tex. Const. art. XI, § 5(a).

The Texas Constitution, at article XI, section 7, similarly prescribes:

7

> [N]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund.

*Id.* § 7(a). WTMPA contends that the PPA violates these provisions because, pursuant to the PPA's terms, WTMPA—a municipal power agency—creates an "unfunded debt" obligation, but WTMPA does not "retain[] control over the amount of power to be purchased" or have "the ability to cease liability by terminating the contract at the end of a budget period." Compl. in Intervention ¶¶ 24-27. As noted, Defendants argue that the provisions do not provide standing to WTMPA to sue because WTMPA is not a city.

"In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (internal quotation marks omitted). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 666 (internal quotation marks omitted). "In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state" and other sources, but the "[u]ltimate[] . . . task is to predict what the state supreme court would do." *Id.*

WTMPA does not dispute that it is not technically a "city" but suggests that, because WTMPA is composed of cities and exercises many of the same powers as does a city, section 5 and 7 should be applied to WTMPA's obligations. *See* WTMPA Resp. at 10-11 (citing Tex. Util. Code § 163.054). Based on these facts, and citing an intermediate Texas appellate court decision, WTMPA argues that this Court should support WTMPA's

8

position that article XI, sections 5 and 7 of the Texas Constitution apply to the debts of WTMPA. *See* WTMPA Resp. at 11-12 (citing *City-Cnty. Solid Waste Control Bd. v. Cap. City Leasing*, 813 S.W.2d 705 (Tex. App. 1991)).

As an initial matter, the Court sees little to no predictive value in the decision cited by WTMPA. In that case, Capital City Leasing, Inc. sued the City-County Solid Waste Control Board ("the Board") for breach of an equipment lease, and the trial court granted summary judgment to Capital City. *See Cap. City Leasing*, 813 S.W.2d at 706-07. On appeal, the Board argued that the lease was void due to creating an unenforceable "debt" under article XI, sections 5 and 7 of the Texas Constitution. *See id.* at 707. The court agreed, finding that the lease "requir[ed] the Board to pursue funding before it can terminate" and so created a pecuniary obligation that "sections 5 and 7 were designed to prevent." *Id.* (holding that the lease was void). While *Capital City*'s holding implicitly rested upon the premise that the Board's contract was within the purview of sections 5 and 7, the decision cannot be said to squarely conclude as much or to direct a finding that the PPA is likewise subject to those provisions. There is no discussion of that underlying premise, no description of the nature of the Board (beyond referring to it as a "governmental unit" able to "obtain[] an appropriation"), or mention of any taxing authority exercised by the Board. *Id.* at 706-07. Nor is there any indication in the opinion that either the Board's Article III standing or its reliance upon the state constitutional provisions was challenged or addressed in the trial court or thereafter. The Court has reviewed the citing references for *Capital City*, as well as those for sections 5 and 7, and has found no additional support for the proposition that these "city"-directed constitutional

provisions would govern WTMPA's contracts. No such authority from the Texas Supreme Court was cited by WTMPA.

The Court's review and analysis of the applicable provisions of the Texas Constitution, related Texas state statutes, and the contractual relationships at issue here lead it to conclude that the Texas Supreme Court would reject WTMPA's attempt to challenge the PPA under article XI, sections 5 and 7 of the Texas Constitution. While a municipal power agency is a "separate municipal corporation," it "may not impose a tax"—meaning, WTMPA may not perform the very act identified in sections 5 and 7 as allowing a "city" to avoid incurring an improper debt. Tex. Util. Code § 163.054(c)(1), (d); *see* Tex. Const. art. XI, §§ 5(a), 7(a); *Cap. City Leasing*, 813 S.W.2d at 707 ("Neither a city nor a county may incur a 'debt' without establishing a tax to cover interest on the obligation and to create a sinking fund of at least 2% to reduce the principal."). Relatedly, the Texas Legislature has set forth restrictions upon statutorily created municipal power agencies that do not include such debt restrictions. *See, e.g.*, Tex. Util. Code § 163.062(d) ("An agency contract to sell or exchange electric energy may require the purchaser to pay for the electric energy regardless of whether the electric energy is produced or delivered."). WTMPA may share certain attributes of a "city," but it does not reasonably appear that the disputed debt limitations apply to such an entity. *See City of Lubbock*, 2024 WL 4218031, at *4 ("The Court concurs with Defendants that the WTMPA was not subject to the requirements of sections 5 and 7 upon entering the PPA.").

It follows that, even accepting the allegations of the Complaint in Intervention as true, WTMPA fails to show that it has suffered a redressable injury, as required for standing

10

to challenge the PPA under article XI, articles 5 or 7 of the Texas Constitution. As jurisdiction has not been established, this claim shall be dismissed.

> B. *Whether WTMPA Plausibly Pleads a Challenge Under Article III of the Texas Constitution*

Next, WTMPA claims that the PPA violates article III, section 52(a) of the Texas Constitution, which directs in relevant part:

> [T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .

Tex. Const. art. III, § 52(a).

> The purpose of this constitutional provision is to prevent the gratuitous application of public funds to any individual. But the [Texas] Constitution does not invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose. Section 52(a) does not prohibit payments to individuals that: (1) serve a legitimate public purpose; and (2) afford a clear public benefit received in return.

*Morales v. Hidalgo Cnty. Irrigation Dist. No. 6*, No. 13-14-00205-CV, 2015 WL 5655802, at *3 (Tex. App. Sept. 24, 2015) (citations omitted). "A transfer of funds for a public purpose, with a clear public benefit received in return," is not violative of section 52. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995).

WTMPA argues that its allegations are sufficient to establish a violation of section 52(a) of the Texas Constitution. Specifically, WTMPA asserts that the payments it has made to Defendants were a "gratuitous" dissemination of public funds, rendering the PPA constitutionally void, because WTMPA has not been sufficiently benefiting from its receipt and use of the Tendered Energy. Compl. in Intervention ¶¶ 29-37. Further, "[c]ontinued

11

payment without accepting energy—and especially without the ability to accept energy due to circumstances beyond the control of WTMPA, including transmission capacity constraints—does not (i) serve a legitimate purpose or (ii) afford a clear public benefit." WTMPA Resp. at 14-15; *see* Compl. in Intervention ¶¶ 35-36.  Defendants counter that a contract is not rendered "gratuitous and void" merely because WTMPA "no longer believes it makes economic sense to transport and resell" the Tendered Energy.  Defs.' Mot. to Dismiss at 6, 22-25 (citing *Morales*, 2015 WL 5655802).

In *Morales*, an irrigation district claimed that a cash-severance provision in an employment contract was void under section 52(a) of the Texas Constitution because the district obtained no benefit from making the severance payment.  *See Morales*, 2015 WL 5655802, at *2-3.  The Court of Appeals of Texas rejected this argument, noting that the provision "was a term that was negotiated by the parties, presumably to achieve [the performance of the employee].  'A political subdivision's paying public money is not 'gratuitous' if the political subdivision receives return consideration.'"  *Id.* at *3 (quoting *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002)).

Here, Defendants and WTMPA negotiated the terms of the PPA and, pursuant to those terms, Defendants deliver energy and credits including renewable energy credits (or "RECs") in exchange for WTMPA's payments.  WTMPA's allegations reflect that it "receives return consideration" under the PPA in the form of both the Tendered Energy (which has been resold, albeit at a discount) and the associated RECs (which the PPA provides have "intrinsic value, separate and apart from the Energy produced").  *Id.*; PPA §

12

1.1; *see* Compl. in Intervention ¶¶ 5, 13-14; *see also City of Lubbock*, 2024 WL 4218031, at *6. There is no allegation that Defendants have failed to supply and deliver the paid-for energy and RECs. In addition, the express terms of the PPA reflect that at least some of the matters now alleged to cause logistical and economic obsolescence were considered by the parties when the agreement was made. *See* Compl. in Intervention ¶¶ 9, 14, 19, 35; PPA § 1.1 (prescribing that WTMPA's "inability to use or resell the Purchased Energy or the Credits" shall not be a force-majeure event); *id.* § 2.10(a) (obligating WTMPA to "arrang[e] for all transmission services required to effectuate [its] purchase of Purchased Energy at and from the Delivery Point").

In sum, even taking the well-pled allegations as true, WTMPA's contention that it is not profiting from its purchase of the energy supplied by the Wind Project fails to plausibly show that its PPA payments are gratuitous for lack of legitimate purpose or public benefit. WTMPA's claim under article III, section 52(a) of the Texas Constitution therefore shall be dismissed without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Whether WTMPA Pleads Money Had and Received/Unjust Enrichment

WTMPA's final claim "presupposes that the PPA is, in fact, void" for the reasons presented in the other claims of the pleading. WTMPA Resp. at 15; *see* Compl. in Intervention ¶¶ 38-41 ("If the PPA is void . . . then . . . WTMPA may seek recovery . . . money had and received."). As outlined above, WTMPA's requests for declaratory judgment as to the void nature of the PPA are subject to dismissal. It follows that WTMPA here fails to state a claim upon which relief can be granted.

13

CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 43) is GRANTED. The claims of Intervenor Plaintiff West Texas Municipal Power Agency are DISMISSED WITHOUT PREJUDICE pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A separate judgment shall be entered.

IT IS SO ORDERED this 25th day of March, 2025.

_____
CHARLES B. GOODWIN
United States District Judge